**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MATTHEW LALLATHIN,**

      **Petitioner,**

  **v.**                      **CASE NO. 2:05-cv-1155**
                                        **JUDGE FROST**
**ALAN LAZAROFF, Warden,**        **MAGISTRATE JUDGE ABEL**

      **Respondent.**

**ORDER and
REPORT AND RECOMMENDATION**

     Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.  Respondent's unopposed request to dismiss the Ohio Attorney General as an unnecessary party to this action is **GRANTED.**  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### I.  FACTS AND PROCEDURAL HISTORY

     The Ohio Seventh District Court of Appeals summarized the facts and procedural history of this case as follows:

> On September 5, 2001, Lallathin was a fifteen year-old boy who lived with his father. That day, Lallathin was home sick from school. Even though he was not yet sixteen and did not have a license, he took the keys to his grandfather's Ford Bronco in order to go for a drive. He also took with him a semiautomatic pistol which was kept at his father's house. On the way home, Lallathin was driving on a paved road which turned into a dirt road. He hit the dirt portion of the road at approximately sixty miles per hour, lost control of the Bronco, and flipped it on its side. After the Bronco flipped, Lallathin picked the gun up and put it in his pocket.
> The victim drove by after the accident and stopped to make sure

Lallathin was okay and unsuccessfully tried to help Lallathin flip the Bronco back onto its wheels. Next, the victim turned to walk toward his truck to call for help, Lallathin pulled the gun from his pocket and flipped the safety off. After this Lallathin blacked out. When he came to, he was lying on the ground and the gun was back in his pocket. He got up and realized the victim was lying in the road, bleeding. Lallathin ran to him and checked his pulse. He then drug the victim behind the Bronco to get him out of the road. Lallathin took the victim's truck and drove to a nearby store where he called 911. He reported his accident and that a man was dead, possibly shot. The sheriff's department arrived on the scene and Lallathin was subsequently arrested for murder.

Because he was a minor, the charges against Lallathin were originally brought in juvenile court. But after a hearing, the juvenile court transferred jurisdiction of the case to the court of common pleas. The Noble County Grand Jury returned an indictment which charged Lallathin with the offense of murder in violation of R .C. 2903.02(A), and a firearm specification in violation of R.C. 2923 .12(A). The matter proceeded to a jury trial where Lallathin was found guilty on both the charge of murder and the firearm specification.

Exhibit 13 to Return of Writ.  On April 12, 2002, petitioner was sentenced to fifteen years to life incarceration plus three years for use of a firearm.  Exhibit 9 to Return of Writ.  Represented by the same attorney, petitioner filed a timely appeal to the Seventh District Court of Appeals.  He asserted the following assignments of error:

1.  The trial court erred by relinquishing jurisdiction of Matthew J. Lallathin and ordering that he be bound over for trial as an adult.

2.  The trial court erred when it admitted over objections State's Exhibits 26, 29 and 32.

3.  The jury's verdict was not supported by sufficient evidence.

Exhibit 10 to Return of Writ.  On June 26, 2003, the state appellate court affirmed the judgment of the trial court.  Exhibit 13 to Return of Writ.  Still represented by the same counsel, petitioner filed

2

a timely appeal of the appellate court's decision to the Ohio Supreme Court. He asserted the

following propositions of law:

> 1. A juvenile court abuses its discretion when it ignores the cumulative weight of the evidence adduced at a transfer hearing.

> 2. The prosecutor must demonstrate by proof beyond a reasonable doubt each element of the offense charged in the indictment.

> 3. A party attempting to have tangible items admitted into evidence bears the burden of demonstrating that the items are in fact what the party purports them to be.

Exhibit 17 to Return of Writ. On October 15, 2003, the Ohio Supreme Court denied leave to appeal

and dismissed the appeal as not involving any substantial constitutional question. Exhibit 19 to

Return of Writ.

Meanwhile, on December 17, 2002, represented by new counsel, petitioner filed a petition

for post conviction relief with the state trial court. He asserted as follows:

> The minor child, Matthew Lallathin, was denied his Sixth Amendment right to counsel and was further prejudiced by counsel's deficient performance in his failure to file a motion to suppress the minor child's statement to law enforcement.

Exhibit 14 to Return of Writ. On October 3, 2003, the trial court denied petitioner's post conviction

petition. Exhibit 16 to Return of Writ. Again represented by the same attorney, petitioner filed a

timely appeal of the trial court's decision. He asserted the following claim:

> The trial court erred in overruling appellant's petition for post conviction relief pursuant to Ohio Revised Code 2953.21 and Criminal Rule 35.

Exhibit 20 to Return of Writ.  On December 16, 2004, the state appellate court affirmed the judgment of the trial court.  Exhibit 22 to Return of Writ.  Petitioner again filed a timely appeal of the appellate court's decision to the Ohio Supreme Court.  He asserted the following proposition of law:

> In the context of a post conviction relief motion alleging ineffective assistance of counsel based upon trial counsel's failure to file a motion to suppress evidence, the defendant/petitioner need only prove that a motion to suppress, if filed, had a possibility of being granted.
>
> A.  The minor child, Matthew J. Lallathin, was denied his Sixth Amendment right to counsel due to counsel's deficient performance and his failure to file a motion to suppress the minor child's statements to law enforcement.
>
> B.  In the context of a post conviction relief motion based upon ineffective assistance of counsel as a result of counsel's failure to file a motion to suppress evidence, the trial court must resist the temptation to make an ultimate conclusion regarding the motion to suppress that has yet to be filed.

Exhibit 23 to Return of Writ.  On April 27, 2005, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. Exhibit 25 to Return of Writ.

On December 27, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  The trial court erred by relinquishing jurisdiction of the petitioner and ordering that he be bound over for trial as an adult violating the petitioner's rights guaranteed to him under the Fourteenth Amendment to the United States Constitution.

4

2.  The jury's verdict was not supported by sufficient evidence as the State prosecution failed to prove or demonstrate beyond a reasonable doubt each element of the charge of murder which violated the petitioner's rights guaranteed to him under the Fourteenth Amendment to the Constitution of the United States.

3.   In the context of a post conviction relief motion alleging ineffective assistance of counsel based upon trial counsel's failure to file a motion to suppress evidence, the defendant/ petitioner need only prove that a motion to suppress, if filed, had the possibility of being granted;

A.  The minor child, Matthew J. Lallathin, was denied his Sixth Amendment right to counsel's [sic] deficient performance and his failure to file a motion to suppress the minor child's statements to law enforcement.

B.  In the context of a post conviction relief motion based upon ineffective assistance of counsel as a result of counsel's failure to file a motion to suppress evidence, the trial court must resist the temptation to make an ultimate conclusion regarding the motion to suppress that has yet to be filed.

4.  The trial court erred and the petitioner was denied effective assistance of counsel when evidence was admitted and put before the jury without foundation as the chain of evidence was not established.

5.  The trial court erred and the petitioner was denied effective assistance of counsel when the petitioner's motion for change of venue was denied in the trial court and the motion was never filed in the juvenile court in violation of the Fifth and Sixth Amendments to the Constitution of the United States.

6.  The juvenile court violated the petitioner's Fifth and Sixth Amendment rights under the United States Constitution, and the petitioner was denied effective assistance of counsel when the juvenile court found facts which would allow an increased sentence to be imposed upon the petitioner by binding the petitioner over to be tried as an adult and the bind over ruling itself violated equal protection of the laws.

5

It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.

## II.  PROCEDURAL DEFAULT

Respondent maintains that the ineffective assistance of trial counsel claims raised in claims four, five and six are barred from federal habeas corpus review because they were not raised in petitioner's state postconviction action.  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id.*  Second, the Court must determine whether the state courts actually

6

enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

In claim four, petitioner asserts the ineffective assistance of trial counsel due to his attorney's failure to object to the introduction of various items of evidence for lack of a proper foundation as to the chain of evidence.[1] In claim five, petitioner asserts the ineffective assistance of trial counsel due to his attorney's failure to file a motion for a change of venue in the juvenile court. In claim six, petitioner asserts that he was denied his right to a jury trial because a judge, rather than a jury decided that he should be tried as an adult; petitioner appears also to assert the ineffective assistance of counsel due to his attorney's failure to raise such an objection at bind-over proceedings.

Because petitioner was represented by the same attorney at trial and on direct appeal, all of his foregoing claims of ineffective assistance of counsel would properly be raised in a petition for post conviction relief pursuant to O.R.C. §2953.21. *State v. Lentz*, 70 Ohio St.3d 527, 529 (1994), citing *State v. Cole*, 2 Ohio St.3d 112, 114 (1982), *State v. Carter* 36 Ohio Misc. 170 (1973). However, in post conviction proceedings, petitioner asserted solely that he was denied the effective

---

[1] To the extent that petitioner asserts as an independent claim that he was denied a fair trial due to improper admission of evidence, such claim is addressed, *infra*.

assistance of trial counsel due to his attorney's failure to file a motion to suppress his statements to

police. *See* Exhibits 14, 20, 23.  Further, any attempt now by petitioner to raise additional claims

of ineffective assistance of counsel in a delayed and successive post conviction petition would most

certainly be barred.

O.R.C. §2953.23 provides in relevant part:

> [A] court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> (1) Either of the following applies:
>
> (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
>
> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

*Id*.  The record fails to reflect that petitioner can meet these requirements here.

Likewise, petitioner's assertion in claim six that he was denied his right to a jury trial

because a judge, rather than a jury, decided that he should be tried as an adult, is readily apparent

from the face of the record and should have been raised on direct appeal, but was not.  Petitioner

may now no longer present such claim to the state courts under Ohio's doctrine of *res judicata*.  *See*

*State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10

Ohio St.2d 175 (1967).

The state courts were never given an opportunity to enforce the procedural rules applicable

to petitioner's claims four, five, and six due to the nature of petitioner's procedural default.  This

Court deems the first and second parts of the *Maupin* test to have been satisfied as to all such claims.

This Court must also decide whether the procedural rules at issue constitute adequate and

independent bases upon which to foreclose review of petitioner's federal constitutional claims.  This

task requires the Court to balance the state's interests behind each procedural rule against the federal

interest in reviewing federal claims.  *See Maupin v. Smith*, 785 F.2d at 138.  Under this analysis, the

procedural rules barring claims four, five, and six constitute adequate and independent state grounds

for denying relief.  The state courts must be given a full and fair opportunity to remedy alleged

constitutional defects.  The requirement that all available claims be presented at the first opportunity

serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest

possible opportunity.  Further, the doctrine of *res judicata* is stated in unmistakable terms in

numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits

under that doctrine.  *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra*.

The Magistrate Judge concludes that petitioner has waived his right to present claims four,

five, and six for federal habeas review.  Petitioner can still secure review of these claims on the

merits if he demonstrates cause for his failure to follow the state procedural rules as well as actual

prejudice from the constitutional violations that he alleges.  As cause for his procedural default of

claim six, petitioner asserts the ineffective assistance of counsel; however, such claim has never been presented to the state courts, and therefore cannot constitute cause for petitioner's procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Contrary to petitioner's contention, he was not without any available remedy to raise such claim in the state courts.  *See Traverse.*  As discussed, since petitioner was represented by the same attorney at trial and on direct appeal, his ineffective assistance of appellate counsel claim would have been properly raised in a petition for post conviction relief.  *See State v. Lentz, supra; State v. Cole, supra; State v. Carter, supra*.  However, petitioner failed to raise any such claim in his post conviction petition.  Petitioner has failed to demonstrate either cause for his procedural defaults or actual prejudice resulting from the alleged constitutional violations.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent*."  Murray v. Carrier*, 47 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333.  After review of the record, the Court does not deem this to be such a case.

### III.  CLAIM ONE: FAIR PRESENTMENT

Respondent argues that petitioner did not fairly present claim one–that he was denied due process of law when he was bound over to be tried as an adult–to the Supreme Court of Ohio.  In order to exhaust available state remedies, a petitioner must first fairly present the substance of his federal habeas corpus claims to the state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Anderson v.Harless,* 459 U.S. 4, 6 (1982).  "The state courts must be provided with a fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's constitutional claims."  *Sampson v. Love,* 782 F.2d 53, 55 (6th Cir. 1986).  Petitioner does not fairly present his

claim simply because the necessary facts supporting a federal constitutional claim are present or because the constitutional claim appears self evident.  *Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983)(citing *Harless*, 459 U.S. at 6).  Furthermore, "[a] petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions employing constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns."  *Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir. 1993)(citing *Franklin v. Rose*, 811 F.2s 322, 326 (6th Cir. 1987)).  Courts normally require more than a single broad generalization that petitioner was denied a "fair trial" or "due process of law."  *Franklin*, 811 F.2d at 326; *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984).  Petitioner, however, need not "cite book and verse on the federal constitution."  *Picard,* 404 U.S. at 277 (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1960)).  The Sixth Circuit has strictly followed the requirement that petitioner fairly presented his federal constitutional claims to the state courts as a precondition to federal habeas review.  *Weaver v. Foltz*, 888 F.2d 1097, 1098 (6th Cir. 1989).

In claim one, petitioner asserts that he was denied due process because the Juvenile Court determined that petitioner should be tried as an adult; however, the record reflects that petitioner argued on direct appeal solely that, in view of the evidence that was presented at the bind over hearing, the trial court erred and abused its discretion by transferring jurisdiction to the adult court. Petitioner never raised any constitutional issue regarding the Juvenile Court's decision.  He neither referred to the Constitution, nor any federal or state cases of constitutional magnitude in making his argument to the state courts.  The state appellate court similarly reviewed petitioner's claim for a violation of state law only:

In his first of three assignments of error, Lallathin asserts:

11

"The trial court erred by relinquishing jurisdiction of Matthew J. Lallathin and ordering that he be bound over for trial as an adult."

Before discussing the merits, it should be noted the statutory scheme relating to the transfer of cases from juvenile court to the court of common pleas was significantly altered effective January 1, 2002. Although much of the law is the same, the entire framework was reenacted under a new chapter in the Revised Code. Both the act charged and the transfer proceeding in this case were completed before the effective date of the amendment. Thus, we will refer to and use the prior version of the applicable statutes.

Lallathin asserts the trial court abused its discretion when it found he was not amenable to care or rehabilitation within a juvenile facility and the safety of the community may require that he be placed under legal restraint, including, if necessary, for the period extending beyond his majority. According to Lallathin, all the testimony at his bind over hearing demonstrated he suffered from Attention Deficit Hyperactivity Disorder (ADHD), that he would be best rehabilitated in the juvenile system, and that this was a "one time" act of violence demonstrating no future danger to the safety of the community. The State argues he would not be rehabilitated sufficiently for his ADHD in the juvenile system, ADHD had nothing to do with his crime and, therefore, treatment for that disorder would not rehabilitate him, and Lallathin had already proven "resistant" to therapy. The State then argues the danger Lallathin poses to the safety of the community requires he be bound over to the adult criminal system.

Juvenile courts have exclusive jurisdiction over any case involving a person alleged to be delinquent for having committed, when younger than eighteen years of age, an act which would constitute a felony if committed by an adult. R.C. 2151.23; 2151.26; *State v. Wilson* (1995), 73 Ohio St.3d 40, 43, 652 N.E.2d 196. But in certain types of delinquency proceedings, the child which is alleged to be delinquent may be transferred to the court of common pleas for criminal prosecution. Under former R.C. 2151.26(B), bind over is mandatory in certain circumstances, such as when a child is alleged to have committed murder. This case does not fit into any of those circumstances even though Lallathin allegedly committed murder. He was only fifteen at the time of the act charged and had not previously been convicted of a felony offense or been adjudicated a delinquent child. *See* R.C. 2151.26(B)(1), (3).

12

Even though the juvenile court was not required to bind Lallathin over to the court of common pleas, it still retained the discretion to do so. *Goins v. Wellington* (Dec. 18, 2001), 7th Dist. Nos. 01 CA 208, 01 CA 210. When determining whether to bind over a particular juvenile, the juvenile court must look to the factors in R.C. 2151.26(C) and keep in mind that the purpose behind the determination is to assess "the probability of rehabilitating the child within the juvenile justice system." *State v. Douglas* (1985), 20 Ohio St.3d 34, 36, 485 N.E.2d 711. The juvenile court enjoys a wide latitude to retain or relinquish jurisdiction, and its decision will not be reversed absent an abuse of discretion. *State v. Watson* (1989), 47 Ohio St.3d 93, 95, 547 N.E.2d 1181. An "abuse of discretion" is more than an error of law or of judgment; rather, it implies the trial court's decision is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. Thus, this court may not substitute its judgment for that of the trial court merely because it would not have made the same choice. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264.

R.C. 2151.26(C)(1) provides a trial court may bind an alleged delinquent child who has allegedly committed a felony to the court of common pleas if it finds:

"(a) The child was fourteen years or older at the time of the act charged.

"(b) There is probable cause to believe that the child committed that act charged.
"(c) After an investigation, including a mental examination, * * * there are reasonable grounds to believe that both of the following criteria are satisfied:

"(i) The child is not amenable to care or rehabilitation * * * in any facility designed for the care, supervision, and rehabilitation of delinquent children.

"(ii) The safety of the community may require that the child be placed under legal restraint, including, if necessary, for the period extending beyond the child's majority." (Emphasis added.) R.C. 2151.26(C)(1).

When making these findings, the juvenile court must keep in mind

13

the following factors:

"(a) A victim of the act charged was five years of age or younger * * *

"(b) A victim of the act charged sustained physical harm to the victim's person during the commission of or otherwise as a result of the act charged.

"(c) The act charged is not a violation of section 2923.12 of the Revised Code, and the child is alleged to have a firearm on or about the child's person or under the child's control while committing the act charged and to have * * * used the firearm to facilitate the commission of the act charged.

"(d) The child has a history indicating a failure to be rehabilitated following one or more commitments [for committing a delinquent act].

"(e) A victim of the act charged was sixty-five years or older or permanently and totally disabled at the time of the commission of the act charged * * *." R.C. 2151.26(C)(2).

Lallathin first argues the juvenile court improperly found he was not amenable to care or rehabilitation in the juvenile justice system. His argument is based upon his assertion he has ADHD and that disorder will not be treated in the adult criminal system. But the evidence in the record supports the trial court's decision that he was not amenable to care or rehabilitation in the juvenile system.

During the hearing the juvenile court held to determine whether it would transfer Lallathin to adult court, both the prosecution and the defense had expert witnesses testify concerning their respective mental examinations of Lallathin. Both witnesses testified it was possible or probable that Lallathin suffered from ADHD. More specifically, both experts testified Lallathin suffered from the inattentive type of ADHD, not the hyperactivity type, and his treatment for that disorder began late in his life. Both experts further testified that any treatment for ADHD would best be found in the juvenile system. But neither expert was sure that Lallathin would be successfully treated for ADHD in the juvenile system.

14

Significantly, neither expert explained how the inattentive type of ADHD led to Lallathin's alleged conduct in this case. For instance, Lallathin's expert, Dr. Harding, testified Lallathin's problems were not "related to defiant behavior, appositional behavior, conduct disorders, disruptive type behaviors. * * * I saw no indication that Matthew ever demonstrated or exhibited hyperactivity in school." Instead, he testified that type of disorder would manifest itself as forgetfulness, low self-esteem, and, in some cases, symptoms of depression. "It's usually the type that revolves the inability to focus attention and attention will shift very quickly from one topic to another and they have difficulty with sustaining directive attention based on, especially, instructions coming from another person." As the trial court concluded, these types of characteristics indicate Lallathin may have been less likely to commit such a violent, random offense. Thus, the juvenile justice system's ability to treat Lallthin for ADHD is unrelated to whether Lallathin will be amenable to rehabilitation in the juvenile system for the murder he allegedly committed.

Furthermore, the Ohio Supreme Court has held the seriousness of the alleged act is relevant to "the assessment of the probability of rehabilitating the child within the juvenile justice system" as the more serious the offense, the less amenable the juvenile will be to rehabilitation in the juvenile system. *State v. Watson* (1989), 47 Ohio St.3d 93, 95, 547 N.E.2d 1181; *see, also,* R.C. 2151.26(C)(2)(b), (c), (d). Here, the alleged act, murder, is one of the most serious acts a juvenile could be charged with committing. And while detained in a juvenile facility pending the transfer hearing, Lallathin refused to participate in programming and had to be confined to his room for four hours as punishment. Finally, the State's expert, Dr. Kohler, testified Lallathin was unable or unwilling to discus his feelings, a fact which would retard his rehabilitation. She opined that it would take one to two years of treatment before Lallathin would "get comfortable enough to express his feelings and talk about his feelings" in order to be fully rehabilitated and that his treatment would take longer than the average person.

Based on these facts, it does not appear that the trial court abused its discretion when it concluded that Lallathin was not amenable to care or rehabilitation in a juvenile facility. Lallathin may suffer from ADHD, but it is unclear how this affected him in the commission of the act charged. He has demonstrated some reticence toward rehabilitation. An expert testified it would take longer than normal for him to be rehabilitated. Finally, he committed murder, a serious

15

offense which normally takes longer periods of rehabilitation. Thus, his argument that the trial court erred in making this finding is meritless.

Lallathin also contends the trial court erred when it found the safety of the community may require he be placed in legal restraint, even after he reached the age of majority. He argues he has no significant history of violence and the facts demonstrate this was a "one time" act of violence. But each expert testified the results of Lallathin's mental examination showed he had an increased risk for future violence. He scored very high in a test suggesting aggressive, antisocial behavior. He scored in a "moderate to high risk" category on another test and those who scored in that range demonstrate a risk of violence thirteen times more than the general public. He was using drugs and alcohol which "would increase his risk of violence." Lallathin did attack the credibility of some of these findings during direct and cross-examinations of the various expert witnesses. But there clearly are facts supporting the trial court's decision. Thus, this argument is also meritless.

In this case, there is no question Lallathin falls within the first two requirements dealing with discretionary transfer. He challenges the trial court's findings regarding R.C. 2151.26(C)(1)(c). But there was evidence on the record supporting the trial court's findings. In addition, we emphasize the broad discretion the juvenile court has when determining whether a particular juvenile should be bound over for a particular offense. Thus, we may only overturn its decision if that decision is unreasonable, unconscionable, or arbitrary. Since the juvenile court's decision was based on evidence in the record that supported its findings, we cannot say it abused its discretion in ordering that Lallathin be bound over to the court of common pleas. Lallathin's first assignment of error is meritless.

Exhibit 13 to Return of Writ.

Petitioner has failed to establish cause for his failure to present claim one to the state courts as a federal constitutional issue. Therefore, this claim is waived.

To the extent that petitioner raises here an issue of state law, the claim cannot be reviewed in federal habeas corpus. A federal court may review a state prisoner's habeas petition only on the

16

grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984): *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

## IV.  CLAIM TWO

In claim two, petitioner asserts that the evidence was constitutionally insufficient to sustain his murder conviction due to lack of any evidence regarding a motive for killing the victim, Todd Morrison. Petitioner argues that there was therefore no evidence that he "purposely" caused the death of Todd Morrison within the meaning of Ohio's murder statute. The state appellate court rejected this claim as follows:

> Lallathin asserts:
>
> "The jury's verdict was not supported by sufficient evidence."
>
> Although Lallathin argues his conviction was not supported by sufficient evidence, much of his argument sounds like a manifest weight argument rather than a sufficiency argument. "Sufficiency of the evidence" is " 'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a

matter of law.' "*State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, quoting Black's Law Dictionary (6 Ed .1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *Id.* at 273, 574 N.E.2d 492. Whether the evidence is legally sufficient is a question of law. *Thompkins* at 386, 678 N.E.2d 541.

The Ohio Supreme Court has endeavored to ensure that the "sufficiency of the evidence" will not be confused with the "manifest weight of the evidence". *See Id.* at paragraph two of the syllabus ("The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."). The weight of the evidence concerns the inclination of the greater amount of evidence. *Id.* at 387, 678 N.E.2d 541. Accordingly, an appellate court may determine a judgment of a trial court is sustained by sufficient evidence, but that its judgment is against the weight of the evidence. *Id.* Although Lallathin's argument sounds like a manifest weight argument, his assignment of error is that the verdict is not supported by sufficient evidence. Accordingly, we will address his argument as a sufficiency argument rather than a manifest weight argument.

Lallathin was convicted of murder in violation of R.C. 2903.02. That statute prohibits anyone from "purposely" causing the death of another. Lallathin argues the State failed to demonstrate that he purposely caused the death of another because it failed to show Lallathin has a reason to cause the death of the victim. Thus, he contends the State failed to prove an essential element of the offense.

Lallathin's argument fails because it demonstrates a misunderstanding of what the statute means when it prohibits any person from purposely causing the death of another. "Motive" is something, such as a willful desire, which leads one to act in a certain fashion. Black's Law Dictionary (7th Ed.1999), 1034. Thus, when Lallathin's argument refers to "purpose", it is really referring to "motive". Although proof of motive is always relevant in a criminal case as it relates to the mental state of a defendant, it is not an essential element of the crime with which the defendant is charged. *State v. Findley*

(1973), 39 Ohio App.2d 166, 175-76, 68 O.O.2d 357, 317 N.E.2d 219. Accordingly, motive is not an essential element of murder. *State v. Stewart* (1991), 75 Ohio App.3d 141, 156, 598 N.E.2d 1275.

The legislature has provided an explanation of what it means when it states a crime must be committed with purpose.

 "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

"Because the intent of an accused dwells in his or her mind and can never be proved by the direct testimony of a third person, it must be gathered from the surrounding facts and circumstances. * * * 'Such an intent may be inferred in a felony-murder when the offense and the manner of its commission would be likely to produce death.' " *State v. Treesh* (2001), 90 Ohio St.3d 460, 484-485, 739 N.E.2d 749, quoting *State v. Garner* (1995), 74 Ohio St.3d 49, 60, 656 N.E.2d 623.

In this case, there were no eyewitnesses to the shooting. Thus, the only evidence providing the circumstances surrounding the shooting are Lallathin's two tape-recorded statements. In those statements, Lallathin repeatedly stated he remembered taking the gun out of his pocket and flipping the safety off. He then claims he blacked out and does not remember shooting the victim. The next thing he remembered was getting up off the ground and seeing the victim lying in the middle of the road, dead and bleeding. At that time, the gun was back in his pocket with the safety off.

Dr. Michael Harding, a clinical psychologist, testified in Lallathin's defense. He stated Lallathin's blackout could be the result of dissociative amnesia which causes someone to forget stressful events. On cross-examination, he admitted that if Lallathin did shoot the victim that might be an event stressful enough to cause the amnesia. The doctor also admitted Lallathin could be malingering.

Given these circumstances, there was sufficient evidence to support a conclusion that Lallathin specifically intended to cause the death of the victim. He took a gun out of his pocket, turned off the safety, and the next thing he knew, the victim is lying dead in front of him. When viewed in the light most favorable to the prosecution, this evidence

19

shows Lallathin purposely caused the death of the victim. Accordingly, this assignment of error is meritless.

Exhibit 13 to Return of Writ.

The decision of the state appellate court is presumed to be correct:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005).  Petitioner has failed to meet this standard

20

here.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson*, at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. (quoting *Jackson*, at 326). For example the trier of fact is entitled to disbelieve a defendant's uncorroborated and confused testimony, and even to discount a defendant's credibility on account of a prior felony conviction. *Id*.

Upon review of the record, and for the reasons detailed by the state appellate court, the Magistrate Judge likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, the evidence was constitutionally sufficient to sustain petitioner's murder conviction. Claim two is without merit.

## V. CLAIM THREE

In claim three, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to file a motion to suppress his statements to police. After an evidentiary hearing, the trial court denied petitioner's claim as follows:

21

On September 5, 2001, Matthew J. Lallathin, the Defendant was a sophomore in high school, just one month shy of his 16th birthday. Claiming to be ill, defendant chose not to attend school on that date.

While at home, defendant obtained an automatic pistol and two clips, each loaded with ammunition.  Defendant loaded the pistol with one of those clips and carried the other.

Then Defendant surreptitiously-, and without permission, took a Ford Bronco owned by his grandfather and headed to school, supposedly to pick up a friend to spend the afternoon with.  Apparently the friend chose not to accompany the defendant, and defendant headed back home on the back roads.

Defendant was apparently traveling too fast, lost control of the Bronco in gravel, and rolled the Bronco over on its side.

Defendant sustained only a scrape to his abdomen.

Defendant retrieved the loaded pistol from inside the Bronco, and put the pistol into his pants pocket.

Defendant attempted to roll the Bronco back onto i[t]s wheels but was unsuccessful.  In disgust, Defendant kicked the Bronco, cracking the windshield.

Around that time, Mr. Morrison drove upon the scene, got out of his truck, ascertained that the defendant was okay, and Morrison offered his assistance.  The two then attempted to right the Bronco onto it['s] wheels, and were unsuccessful.  Morrison then indicated that someone else would need to be called, and Morrison started to walk back in the direction of his truck.

Defendant reached into his pants pocket, obtained the pistol, clicked off the safety, and shot Morrison in the head, killing him instantly.

Defendant had never met Morrison before, and had no idea who he was.

22

After dragging Morrison's body off the road, Defendant then got into Morrison's truck and started to drive away from the scene.

At that time, another motorist in a little red truck was approaching the scene in the direction opposite to defendant as he was leaving.  The man in the little red truck knew defendant, as he had seen defendant before.

Defendant told the red truck driver that he should go down to the scene, because there had been a wreck, and defendant thought that someone had been shot.

The red truck driver was reluctant, but rather told defendant that defendant ought to report the incident to authorities.

Defendant then proceeded to a nearby country store and by telephone reported the incident to the Noble County Sheriff's Office, indicating that a person had been shot.

Defendant then went home and called his grandfather.

Upon request, the grandfather and grandmother took the defendant to the Noble County Sheriff's Office to discuss the incident.  They waited in the lobby for a short time, and then defendant was escorted to Detective Hannum's office, where he met Deputies, Presnell and Smith.  They awaited the arrival of Detective Hannum, who arrived soon thereafter.  There was no questioning of the defendant prior to the arrival of Detective Hannum.

Some testimony was offered that Defendant had been threatened in some manner by the Sheriff.  That testimony is found not to be credible.

At some point, the grandfather had asked if he, or when the father arrived if the father, could be present with the defendant during questioning.  The requested was denied.  Defendant never requested the presence of either for the questioning.

When Detective Hannum arrived in his office, he read the Miranda Rights to Defendant, had Defendant read them, and obtained from Defendant his waiver of those rights.  A taped statement was then taken....

Defendant never requested the presence of an attorney.  Although at the hearing Defendant stated he requested an attorney before the tape was turned on, that statement is wholly incredible.  That assertion is contradicted by Detective Hannum, Defendant's own signed waiver, and Defendant's own statements on the tape.

Defendant was not new to the justice system.  He had already been through the whole process on a prior delinquency charge.

The whole process of taking the statement on September 5, 2001, took less than 2 hours.  And, that process was interrupted several times by either phone calls that Detective Hannum took, or other breaks when additional physical evidence was obtained from the Defendant.

On the following day, September 6, 2001, Defendant was again questioned by Detective Hannum, this time in the presence of his father.  Before questioning, Defendant again waived his Miranda Rights, as attested by his father, and gave an additional statement....

Counsel was subsequently retained for the Defendant.

Retained counsel elected not to file any motion to suppress any statement given by the Defendant.

A juvenile, even if he is only age 12, can knowingly and understandingly waive his Miranda Rights, so long as the proper explanation is made.  *In re Watson*, 47 Ohio St.3d 86 (1989).  In this case, the defendant almost 16, has knowingly and understandingly waived his Miranda Rights and given two statements to the police. No improper coercion was foisted upon defendant by the police.

There is no obligation on the part of an attorney to file a motion to

24

suppress when there are not grounds to support that motion....
Grounds to support a motion to suppress are clearly lacking in this
case.

... Even had trial counsel filed a motion to suppress, there is no
reasonable probability that such motion would have been granted,
and hence no reasonable probability of a different outcome at trial.
*Strickland v. Washington, supra*....

Exhibit 16 To Return of Writ.  (Doc. 8-8.)  The state appellate court affirmed the trial court's

judgment in relevant part as follows:

Appellant, Matthew J. Lallathin, asserts ineffective assistance of
counsel, alleging that his trial counsel failed to file a motion to
suppress Appellant's recorded police interviews. Appellant asserts
that this failure on counsel's part was error since he was a minor; his
Miranda waiver was invalid; he was intimidated by the investigating
officers; and he was denied the opportunity to see or speak with his
father or a lawyer.

The trial court provided a full evidentiary hearing on these issues and
found Appellant's testimony lacking in credibility. Appellant now
appeals the trial court's decision denying him postconviction relief.

***

 The Noble County Juvenile Court bound Appellant over to the adult
general division of the Noble County Court of Common Pleas, and
the Noble County grand jury indicted Appellant on one count of
murder with a firearm specification.

Appellant's case proceeded to jury trial on April 8, 2002. At trial,
Appellant's counsel's main argument was that the state could not
prove the essential elements of its case since Appellant blacked out
at the scene. Thus, the state could not establish that he purposefully
killed the victim. Notwithstanding counsel's arguments, the jury
found him guilty of murder with a firearm specification, and
Appellant was sentenced to eighteen years to life in prison. He
appealed, and this Court affirmed his conviction and sentence.

*Lallathin,* supra.

Appellant filed a petition for postconviction relief in the trial court. The trial court conducted a postconviction hearing and subsequently overruled Appellant's postconviction petition in its October 3, 2003, Journal Entry and issued Findings of Fact and Conclusions of Law. Appellant timely appealed this decision.

Based on the following reasons, Appellant's claimed error on appeal is overruled, and we affirm the decision of the trial court.

Appellant's sole assignment of error asserts:

"The Trial Court erred in overruling Appellant's petition for post conviction relief pursuant to Ohio Revised Code § 2953.21 and Criminal Rule 35. (Judgment Entry and Findings of Fact and Conclusion of Law, October 3, 2003)."

A person convicted of a criminal offense asserting a violation of his or her constitutional rights may petition the court that imposed the sentence for appropriate relief. R.C. § 2953.21(A)(1)(a). A postconviction petition is not an appeal; instead, it is a civil action collaterally attacking a criminal judgment. *State v. Steffen* (1994), 70 Ohio St.3d 399, 410, 639 N.E.2d 67. State postconviction review is not a constitutional right, and the petitioner only receives the rights established by statute. *Id.*

"A prisoner is entitled to postconviction relief under Section 2953.21 et seq., Revised Code, only if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution." *State v. Lester* (1976), 41 Ohio St.2d 51, 55, 322 N.E.2d 656, 70 O.O.2d 150, citing *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.

Postconviction review provides a narrow remedy because res judicata bars any claim that was or could have been raised at trial or on direct appeal. *Perry,* 10 Ohio St.2d 175, 180, 39 O.O.2d 189, 226 N.E.2d 104; *State v. Duling* (1970), 21 Ohio St.2d 13, 254 N.E.2d 670, syllabus paragraph two. Since the instant petition was primarily founded on testimony de hors the trial court record, it was addressed via postconviction review.

26

"Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues[.]" R.C. § 2953.21(E). In the instant postconviction proceeding, the trial court conducted a full hearing on the matter, following which it denied Appellant's petition.

Appellant asserts that he was denied the effective assistance of trial counsel in violation of the Sixth Amendment. The U.S. and Ohio standards governing ineffective assistance of counsel claims are essentially the same. It consists of a two-part test to assess whether the claim requires a reversal:

"First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687-689, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Thompson* (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407.

Counsel's actions are presumed competent, and a defendant bears the burden to prove ineffective assistance of counsel. *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476.

Appellant asserts that his counsel was ineffective based on his counsel's failure to file a motion to suppress. Appellant claims such a motion was essentially required because Appellant was a minor at the time; his *Miranda* waiver was invalid; he was intimidated by the investigating officers; and he was denied the opportunity to speak with his parents or a lawyer. Following Appellant's postconviction hearing, the trial court determined that Appellant's motion to suppress had no support and would have been overruled. (Oct. 3, 2003, Findings of Fact and Conclusions of Law.)

The Sixth Amendment right to effective assistance of counsel is not violated by counsel's failure to pursue a motion to suppress unless the

27

motion had merit. *State v. Ratcliff* (1994), 95 Ohio App.3d 199, 206, 642 N.E.2d 31. The failure to file a motion to suppress can only be reversible error if it is prejudicial. *Kimmelman v. Morrison* (1986), 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305. But, "failure to file or pursue a motion to suppress, which *could possibly have been granted,"* and that implicated critical defense issues, constitutes ineffective counsel. *State v. Justice* (1996), 10th Dist. No. 96APA05-616, 4, citing *State v. Garrett* (1991), 76 Ohio App.3d 57, 600 N.E.2d 1130.

Appellant asserts that the trial court erred in implementing the incorrect standard since the trial court held: "Even had trial counsel filed a motion to suppress, there is no reasonable probability that such motion would have been granted, and hence no reasonable probability of a different outcome at trial." (Oct. 3, 2003, Findings of Fact and Conclusions of Law.) Appellant asserts, based on *Justice* and *Garrett, supra,* that the trial court failed to assess whether the motion to suppress *"could possibly have been granted [.]"* *Garrett, supra*.

The courts in *Garrett* and *Justice* were considering ineffective assistance of counsel arguments in direct appeals. *Justice,* 10th Dist. No. 96APA05-616; *Garrett,* 76 Ohio App.3d 57, 600 N.E.2d 1130. The *Garrett* court reversed and remanded the matter to the trial court so a motion to suppress could be filed and considered. *Id*. at 63, 600 N.E.2d 1130.

In the instant postconviction proceeding, however, the trial court conducted a full evidentiary postconviction hearing to assess the validity of Appellant's assertion that his recorded interviews were unlawful, and thus could form the basis for a motion to suppress. Appellant and three other witnesses testified on his behalf, and the State of Ohio presented two witnesses' testimony. (Sept. 3, 2003, Postconviction Petition Hearing ("Hearing") Tr.)

Once the trial court held an evidentiary hearing relative to Appellant's postconviction petition, a reviewing court should not overrule its findings if they are supported by competent and credible evidence unless it abused its discretion. *State v. Mitchell* (1988), 53 Ohio App.3d 117, 119, 559 N.E.2d 1370. Abuse of discretion suggests that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. Thus, this Court must assess whether the trial court abused its discretion in denying Appellant's postconviction petition.

The success of Appellant's postconviction petition depended on the credibility of his own testimony since his postconviction testimony was truly the only new evidence at his hearing. Appellant's three other postconviction witnesses, his grandparents and his father, testified at his jury trial.

At his postconviction hearing, Appellant testified that at the time in question he was taken to the sheriff's office by his grandparents, but they were not permitted to sit with him during his questioning since they were not his guardians. Appellant claims he asked for his father, and he was advised that he was on his way. (Hearing Tr. p. 41.) Appellant was taken into an office with two detectives, a deputy, and Sheriff Smith. (Hearing Tr. p. 41.) At that point, Appellant claimed, "Sheriff Smith started yelling at me, trying to get me to confess, trying to scare me. He was cussing at me, saying that he already knew that I did the offense. He already had evidence that I did it. He told me to quit lying." (Hearing Tr. p. 42.) Appellant said that he was threatened with jail. (Hearing Tr. p. 42.) After Sheriff Smith left the room, the other detectives allegedly raised their voices to Appellant as well. (Hearing Tr. p. 45.)

In support of Appellant's petition, his grandmother testified that on the day she took him in for questioning, she heard the sheriff swearing in a loud voice and calling Appellant a liar. (Hearing Tr. p. 17.) However, neither Appellant's grandparents nor his father actually witnessed the questioning. (Hearing Tr. p. 25.)

Appellant's grandparents and his father, James, testified that they were denied in their request to see Appellant because deputies were "busy with him." (Hearing Tr. pp. 8, 12, 33.) There was testimony that Sheriff Smith also advised the grandparents that they were performing tests on Appellant. (Hearing Tr. p. 19.)

It is undisputed that Appellant signed a *Miranda* rights waiver on that first day at the sheriff's office after his rights were read to him. (Hearing Tr. p. 46.) Detective Hannum advised Appellant that he was going to turn on his tape recorder. (Hearing Tr. p. 45.) At that point Appellant claims that he asked if he needed a lawyer; but he was advised that they would get to that later. (Hearing Tr. p. 46.) Appellant claims he was subsequently read his *Miranda* rights and they started tape-recording. (Hearing Tr. p. 46.)

29

Appellant testified that he signed the *Miranda* waiver because he thought he would get to go home just like his prior encounter with the police. (Hearing Tr. p. 46.) No one ever advised him that he would be able to go home, but they never advised him that he was under arrest. (Hearing Tr. p. 54.)

According to Appellant, at one point the detective turned off the tape recorder; made Appellant strip off his clothes in the booking area; searched him; and made him put on an orange jumpsuit, which made Appellant afraid and embarrassed. Appellant testified that his interviewing and testing lasted three to four hours. (Hearing Tr. pp. 47, 50.)

Detective Steve Hannum also testified at the hearing. Detective Hannum stated that upon his arrival at the sheriff's office, Appellant was in his office with Deputy Smith and Detective Presnell. (Hearing Tr. p. 76.) Detective Hannum conducted Appellant's questioning after he read and explained Appellant his *Miranda* rights. (Hearing Tr. pp. 77, 78.) Appellant and Detective Hannum signed a *Miranda* rights statement at 3:15 p.m. on September 5, 2001. (Hearing Tr. p. 77.) When Detective Hannum initiated questions that were to be recorded, he again read Appellant his *Miranda* rights. (Hearing Tr. pp. 79-80.)

According to Detective Hannum, Appellant never requested an attorney, his parents, or his grandparents. (Hearing Tr. p. 80.) There were several interruptions during the interview, which lasted approximately 45-minutes to an hour. According to Detective Hannum, at one point Sheriff Smith opened the door to ask the detective a question. (Hearing Tr. p. 82.) At another point, Detective Warner conducted a gun residue test on Appellant's hands. (Hearing Tr. p. 82.)

On cross-examination, Detective Hannum denied that Appellant ever asked for his father, his grandparents, or an attorney on the first day of questioning. He stated that, "[i]f that young man would have asked for an attorney I would have stopped my questioning immediately." (Hearing Tr. pp. 91-92, 104.)

Sheriff Landon T. Smith also testified at the postconviction hearing. Smith testified that when he arrived at the Sheriff's Department on September 5, 2001, Appellant was already talking with the detectives

30

and his grandparents were in the lobby. (Hearing Tr. p. 63.) Smith took the grandparents to his office and answered their questions concerning the incident. (Hearing Tr. p. 63 .) They never asked Smith to see Appellant even after he advised them that the detectives were talking with him. (Hearing Tr. p. 63.)

Smith denied threatening Appellant, and Smith testified that he never spoke with Appellant after the incident. (Hearing Tr. p. 64.) Smith also denied swearing at or berating Appellant. (Hearing Tr. p. 65.) Further, Smith stated that he spoke with Appellant's father on the day of the incident, and at no time did James ask to see Appellant that afternoon. Smith cannot recall whether James asked to see Appellant later that evening. (Hearing Tr. p. 65.) Smith does not believe that Appellant ever requested an attorney. (Hearing Tr. p. 68.)

Appellant testified that he repeatedly asked for his father, but was advised that he had not yet arrived. (Hearing Tr. p. 50.) Appellant was later taken into a courtroom for his detention hearing. He testified that he again asked for an attorney in front of the hearing judge, although apparently off the record. (Hearing Tr. pp. 51, 58.)

 Appellant was later taken to a detention center for the night. The next day, Appellant was brought back to the sheriff's office.

Detective Hannum testified that Appellant was returned from the detention center on September 6, 2001, in order to attend a hearing that was later canceled. (Hearing Tr. p. 84.) Detective Hannum contacted James in order to discuss the gun, and James ended up being at the office at the same time as Appellant. (Hearing Tr. p. 84.) This led to the second recorded interview at which both Appellant and his father, James, signed the *Miranda* waiver. (Hearing Tr. p. 85.)

That second day, Appellant's father James accompanied Appellant and the investigating officers to the scene of the accident. (Hearing Tr. p. 34.) James consented and participated in the interview and reconstruction at the incident scene. (Hearing Tr. p. 34.) After the detective read the *Miranda* statement aloud, James and Appellant signed a document indicating that the second interview took place and again waiving Appellant's *Miranda* rights. (Hearing Tr. pp. 36-37.)

James indicated that: "They'd already talked to him so it didn't make any difference anyway." (Hearing Tr. pp. 34-35.) James also stated

31

that the officers raised their voices to Appellant, but then he conceded that the questioning did occur on the side of a busy interstate highway and that the interview was being tape-recorded. (Hearing Tr. p. 35.)

Appellant admits that he signed a second waiver of his *Miranda* rights. (Hearing Tr. p. 53.) He testified that he provided another recorded statement since he, "didn't think it would matter." (Hearing Tr. p. 53.)
Appellant's father never contacted an attorney on the first day that Appellant was at the sheriff's office, and he is uncertain if he tried to contact one on the following day. (Hearing Tr. p. 38.)

Contrary to Appellant's argument, Ohio law does not require a juvenile's parents to consent to his or her *Miranda* waiver. In fact, in construing the voluntariness of a juvenile's confession, courts are to look to the same "totality of the circumstances" factors, which include one's age, to be used when examining an adult's confession. *In re Watson* (1989), 47 Ohio St.3d 86, 89-90, 548 N.E.2d 210. "[T]he fact that a juvenile is subject to police interrogation does not change the nature of the constitutional rights afforded to him." *Id.* at 89, 548 N.E.2d 210. The Ohio Supreme Court has concluded that upon considering the totality of the circumstances surrounding a juvenile's confession, a "trial court can properly determine whether the juvenile appreciated his rights and voluntarily waived them in the absence of an interested adult or parent." *Id.* at 90, 548 N.E.2d 210.

The trial court in the instant cause concluded that Appellant knowingly and willingly waived his *Miranda* rights without improper coercion. Appellant signed two *Miranda* waivers. The trial court discredited Appellant's testimony to the effect that he felt coerced. Therefore, even if Appellant's trial counsel had moved to suppress, the trial court in reviewing his postconviction claim concluded that there was no reasonable probability that it would have been granted. (Oct. 3, 2003, Findings of Fact and Conclusions of Law.)

A reviewing court must defer to a trial court's assessment of the weight and credibility given to the evidence at a suppression hearing. *State v. Moore* (1998), 81 Ohio St.3d 22, 31, 689 N.E.2d 1. In the instant cause, the conflicting evidence is clear. Appellant asserts that he requested counsel and that he was coerced into giving a statement. To the contrary, the detectives, the deputies, and the sheriff never heard any such request or coercion. Appellant says Sheriff Smith threatened him whereas no witness even saw Smith attempt to

32

question Appellant.

Appellant also claims to have asked for counsel in the presence of the detention hearing judge, but his request was ignored. (Hearing Tr. pp. 51, 58.) There is apparently no record of such request. Further, based on his prior experience with the police, Appellant testified that he thought he would get to go home if he cooperated with the police. Yet he admits that no one ever told him that he would get to go home. (Hearing Tr. pp. 46, 54.) These facts tend to discredit Appellant's testimony.

The trial court denied Appellant's petition finding that his hearing testimony lacked credibility. Appellant's allegation that Sheriff Smith threatened him was not credible. The trial court also found that Appellant never requested his father's or grandparents' presence for questioning, and that Appellant never requested an attorney. His statement that he requested counsel before the tape recorder was turned on was deemed "wholly incredible." (Oct. 3, 2003, Findings of Fact and Conclusions of Law .) The trial court found that Appellant's assertion is contrary to Detective Hannum's testimony, Appellant's signed waiver, and his recorded statements. (Oct. 3, 2003, Findings of Fact and Conclusions of Law.) Further, the trial court noted that Appellant again waived his *Miranda* rights the next day in his father's presence and gave another statement. (Oct. 3, 2003, Findings of Fact and Conclusions of Law.)

In deferring to the trial court's judgment in assessing the weight and credibility of Appellant's testimony, we cannot find from this record that the trial court abused its discretion in denying Appellant's postconviction petition. It appears on review there was no possible way a motion to suppress could have been successful.

It is important to note that Appellant's trial counsel's trial strategy relied in part on Appellant's cooperation with the authorities. In his opening and closing trial statements, counsel referred to Appellant's lack of motive; the fact that he was in a significant automobile accident; that he never tried to cover up the incident; and that he blacked out at the scene. Counsel argued that Appellant suffered from traumatic disassociation on the date of the incident, and he had a medical expert explain the potential causes of traumatic disassociation, which include witnessing a traumatic event or a head injury from a motor vehicle accident. (Trial Tr. p. 542.)

Trial counsel also had Appellant's father and grandparents testify that Appellant was cooperative after the incident; that he never lied or hid his involvement; and that Appellant could not remember what happened that day.

Disregarding Appellant's statements, all of the other evidence presented at trial pointed toward Appellant. Appellant's recorded interviews describing the incident bolstered his claim that he "blacked out" and the fact that he was cooperative and could not have intentionally committed the crime. Again, counsel's actions are presumed competent, and a defendant has the burden to prove ineffective assistance of counsel. *Hamblin,* supra, 37 Ohio St.3d 153, 155-156, 542 N.E.2d 476. As such, Appellant's trial counsel may have strategically decided not to file a motion to suppress in an attempt to establish that he could not have purposefully killed the victim. We must also note here that there is absolutely nothing in the record to indicate Appellant's claims of coercion were made known to his trial counsel.

Based on the foregoing, this Court hereby affirms the trial court's decision to deny Appellant's postconviction petition. Its findings that counsel was not ineffective for failing to file a motion to suppress are supported by competent and credible evidence. *Mitchell, supra,* 53 Ohio App.3d 117, 119, 559 N.E.2d 1370. There is no evidence suggesting that the trial court's attitude was unreasonable, arbitrary, or unconscionable and we affirm the decision in full.

Exhibit 13 to Return of Writ.

Again, the decision of the state appellate court is entitled to a presumption of correctness. 28 U.S.C. §2254(d), (e). Petitioner simply has failed to establish that the decision of the state appellate court is so unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor, supra.*

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Strickland,* 466 U.S. at 697.

Petitioner again asserts that he was intimidated and coerced into giving a statement by police. The Fifth Amendment provides that "[n]o person ⋯ shall be compelled in any criminal case to be a witness against himself." The privilege against self-incrimination prohibits the government from using any statement against a criminal defendant "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona, supra*, 384 U.S. at 444. "[B]y custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been

35

taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* A person being questioned in a custodial interrogation must be warned "that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Id.* Additionally, in order for a confession to be admissible, it " 'must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' " *Bram v. United States,* 168 U.S. 532, 542-43, 18 S.Ct. 183, 42 L.Ed. 568 (1897). A confession is involuntary where

> the police "extorted [the confession] from the accused by means of coercive activity." ⋯ Once it is established that the police activity was objectively coercive, it is necessary to examine petitioner's subjective state of mind to determine whether the "coercion" in question was sufficient to overbear the will of the accused⋯ Finally, petitioner must prove that his will was overborne because of the coercive police activity in question. If the police misconduct at issue was not the "crucial motivating factor" behind petitioner's decision to confess, the confession may not be suppressed⋯

*McCall v. Dutton,* 863 F.3d 454, 459 (6th Cir.1988) (citations omitted.)

That said, the state court found petitioner's allegations of coercion to be incredible, and petitioner has failed to provide any evidence to warrant altering such conclusion here.  *See* 28 U.S.C. §2254(e)(1).  In view of the foregoing, and for the reasons discussed by the state appellate court, petitioner has failed to establish either that he was prejudiced by counsel's failure to file the motion to suppress his statements to police, or that the state appellate court's decision denying this claim warrants federal habeas corpus relief.  Claim three is without merit.

36

## VI.  CLAIM FOUR

In claim four, petitioner asserts that he was denied a fair trial due to admission of

> gunshot residue evidence, bullet fragments, blood samples, a
> cartridge, [a] box containing [a] handgun, [and a] bag of clothing, all
> of which the chain of evidence was seriously corrupted [sic].  This
> resulted in the improper introduction of BCI reports, evidence tag
> submission sheets, and testimony of witnesses.

*Petition*.  As noted by the respondent, for the reasons discussed, *supra*, any claim regarding

improper admission of evidence aside from that related to blood evidence, is waived due to

petitioner's failure to establish cause and prejudice for his failure to raise such claim on direct

appeal.

The state appellate court rejected petitioner's claim regarding improper admission of blood

evidence as follows:

> Lallathin objects to the introduction of the clothing and the blood
> sample into evidence because they were not identified by the
> testimony of a witness with knowledge. Thus he argues the State
> failed to establish the "vital first step" in the chain of custody. He
> then argues the DNA report was inadmissible because the items it
> relied upon, the clothing and blood sample, were inadmissible.
>
> In Ohio, a trial court enjoys broad discretion regarding the
> admissibility of evidence and, unless it has clearly abused its
> discretion and the defendant has been materially prejudiced thereby,
> an appellate court should not disturb its decision. *State v. Issa* (2001),
> 93 Ohio St.3d 49, 64, 752 N.E.2d 904. As stated above, an "abuse of
> discretion" is more than an error of law or of judgment; rather, it
> implies the trial court's decision is unreasonable, arbitrary or
> unconscionable. *Adams* at 157, 404 N.E.2d 144.
>
> Given the evidence in this case, it does not matter whether or not
> Lallathin's argument concerning the admissibility of that evidence has
> merit because he was not materially prejudiced by its introduction

37

> into evidence. This evidence did nothing more than prove the blood on Lallathin's clothing was the victim's blood. But Lallathin admitted he had the gun in his hand, blacked out, and woke up with the victim dead in front of him. He then admitted he drug the bloody victim approximately thirty feet until he was behind the back bumper of Lallathin's overturned truck. It is surely a reasonable inference to conclude Lallathin might have had some of the man's blood on his clothing. Given Lallathin's admissions in his two audio-taped statements to the police, the introduction of this evidence was surplusage, *i.e.* it did not prove anything which needed to be proved. Any error in the introduction of this evidence would be harmless error. *See, e.g. State v. Adams* (1995), 106 Ohio App.3d 139, 144, 665 N.E.2d 700. Accordingly, this assignment of error is meritless.

Exhibit 13 to Return of Writ.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago*, 637 F.2d 449, 457 (6th Cir. 1980), *cert. denied*, 456 U.S. 980 (1982).

> Generally, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir.2002) (citing *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.1994)).

*Biros v. Bagley,* 422 F.3d 379, 391 (6th Cir. 2005). For the reasons discussed by the state appellate court, review of the record fails to indicate that such are the circumstances here, particularly in view

of petitioner's statements to police.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel        
United States Magistrate Judge